UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LEAH F., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | NO. 4:17-cv-05187-SAB <br><br> **ORDER GRANTING SUMMARY JUDGMENT AND REMANDING FOR AWARD OF BENEFITS** |

Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 12 and 13. The motions were heard without oral argument. Plaintiff appeals the denial of social security benefits. For the reasons set forth below, the Court grants Plaintiff's motion for summary judgment, and remands for an award of benefits.

The crux of this case centers around Plaintiff's back and hip pain, which Plaintiff alleges prevent sedentary work due to pain when sitting, a need to lie down periodically, take extra breaks, and miss an unacceptable number of workdays. Plaintiff alleges that the Administrative Law Judge (ALJ) improperly dismissed Plaintiff's symptom testimony regarding the severity and consequences of that pain, as well as the corroborating third party function report of Plaintiff's mother. Plaintiff further alleges that the ALJ committed harmful error by not giving ample weight to treating physician's testimony. Given the vocational expert's testimony, had this evidence been properly weighed, Plaintiff would have

**ORDER GRANTING SUMMARY JUDGMENT AND REMANDING FOR AWARD OF BENEFITS ~ 1**

been entitled to benefits. Accordingly, the Court grants summary judgment for Plaintiff.

## JURISDICTION AND PROCEDURAL POSTURE

Plaintiff protectively filed for benefits on April 18, 2013 and filed her SSI application on December 8, 2015. Her alleged onset date was January 1, 2013. The application was denied initially and on reconsideration, and a hearing was timely requested. The hearing was held on July 12, 2016, and in a September 27, 2016 order, the ALJ found that Plaintiff was able to perform past relevant work as a school childcare attendant, denying the claim on that basis. Plaintiff timely sought review by the Appeals Council, who denied benefits, and seeks review of the ALJ's decision under 42 U.S.C. § 405(g).

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if his impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering the claimant's age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person meets the definition of disabled under the Social Security Act. 20 C.F.R. § 404.1520(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

At step one, the ALJ must determine whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(b). Substantial gainful activity is defined as significant physical or mental activities done or
**ORDER GRANTING SUMMARY JUDGMENT AND REMANDING FOR AWARD OF BENEFITS** ~ 2

usually done for profit. 20 C.F.R. § 404.1572. If the individual is engaged in substantial gainful activity, he or she is not disabled. 20 C.F.R. § 404.1571. If not, the ALJ proceeds to step two.

At step two, the ALJ must determine whether the claimant has a severe medically determinable impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). If the claimant dose not have a severe medically determinable impairment or combination of impairments, he or she is not disabled. If the ALJ finds the claimant does have a severe impairment or combination of impairments, the ALJ proceeds to step three.

At step three, the ALJ must determine whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledges by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525; 20 C.F.R. § 404. Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. If not, the ALJ proceeds to the fourth step.

Before considering step four, the ALJ must determine the claimant's "residual functional capacity." 20 C.F.R. § 404.1520(e). An individual's residual functional capacity is his or her ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. § 404.1545(a)(1). In making this finding, the ALJ must consider all of the relevant medical and other evidence. 20 C.F.R. § 404.1545(a)(3).

At step four, the ALJ must determine whether the claimant's residual functioning capacity enables the claimant to perform past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant can still perform past relevant work, he or she is not disabled. If the ALJ finds the claimant cannot perform past relevant work, the analysis proceeds to the fifth step.

At step five, the burden shifts to the Commissioner to prove the claimant is able to perform other work in the national economy, taking into account claimant's age, education, work experience, and residual functioning capacity. 20 C.F.R. § 404.1520(g). To meet this burden, the Commissioner must establish (1) the claimant is capable of performing other work; and (2) such work exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2); *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, and the briefs to this Court. Only the most relevant facts are summarized here. Plaintiff alleges disability due to a combination of impairments, primarily involving her hips and lower back, as well as fatigue and depression. She received treatment for those conditions from early 2014 through her Date Last Insured of June 30, 2016.

In January of 2014, Plaintiff complained of lower back and left hip pain and was referred to Prosser Memorial Hospital for imaging. ECF No. 9 at 386-91. The imaging confirmed mild to moderate osteoarthritic changes in her left hip. *Id.* at 393.

Plaintiff began treatment with Colleen Strand, an ARNP, in April of 2014. Nurse Strand originally indicated that Plaintiff's right hip was tender and gave her a referral for an orthopedic surgeon. *Id*. at 402. One month later Nurse Strand saw Plaintiff again, and this time identified chronic lower back pain in addition to chronic left hip pain. *Id.* at 408. She prescribed Plaintiff Tramadol, 50 mg every 6 hours as needed. *Id*. One week later Nurse Strand saw Plaintiff again, noting that the Tramadol "works fairly well," and that Plaintiff "doesn't want anything stronger," but that "even with the Tramadol she has difficulty getting comfortable and sleeping," that the "pain radiates up to lower back and down to left knee," and that walking even short distances aggravates the pain. Almost three months later,

in February of 2015, Nurse Strand found that the Tramadol "isn't quit (sic) enough for her pain," noting an average pain while sitting of "4-5/10." *Id.* at 414. As a result, Nurse Strand switched Plaintiff to Oxycodone, three tabs a day. *Id.* at 415.

Plaintiff began seeing Dr. Jeffrey Kiki, DO, in April of 2015. *Id.* at 420. Dr. Kiki began a course of treatment for Plaintiff's back, hip, and mental health ailments, including depression and fatigue. In October 2015, Plaintiff began seeing Dr. Michael Turner for the same hip and back pain. After seeing Plaintiff for a few weeks, Dr. Turner filled out a form indicating that Plaintiff would be unable to perform any non-sedentary work, and that Plaintiff would miss three days a week.

## ALJ'S FINDINGS

**At step one**, the ALJ found Plaintiff was not engaged in substantial gainful activity during the benefits period of January 1, 2013 through her date last insured of June 30, 2016.

**At step two**, the ALJ found Plaintiff had the following severe impairments: status post lumbar laminectomy/fusion with anterolisthesis, bilateral hip arthritis, sacral iliac arthritis, obesity, and chronic left radiculitis.

**At step three**, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404 Subpt. P. App. 1 (citing 20 C.F.R. §§ 416.920(d), 416.925, 416.926, 416.920(d), 416.925 and 416.926.)

Before reaching step four, the ALJ found Plaintiff has the residual functional capacity to perform sedentary work as defined in 20 CFR 4014.1567(a) and 416.967(a). This was largely based on the ALJ's finding that much of Plaintiff's self-described limitations regarding sitting for extended periods was inconsistent with the treatment records.

**At step four** the ALJ found Plaintiff able to perform past relevant work as a school childcare attendant as actually performed. As a result, the ALJ did not reach step five, and found that Plaintiff was not disabled during the benefits period.

ORDER GRANTING SUMMARY JUDGMENT AND REMANDING FOR AWAIT OF BENEFITS - 5

Plaintiff alleges that the ALJ harmfully erred by discrediting her symptom testimony, by improperly weighing the medical opinion evidence of treating physicians, and by improperly discrediting the third-party function report submitted by her mother.

**STANDARD**

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under Section 405(g) is limited, and the Commissioner's decision will be disturbed "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." *Shaibi v. Berryhill*, 883 F.3d 1102, 1106 (9th Cir. 2017). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C § 405(g).

"Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012). However, when determining whether substantial evidence exists, a reviewing court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).

A district court "may not reverse and ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115. The burden of showing an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

Plaintiff alleges that (1) the ALJ improperly rejected her symptom claims; (2) improperly weighed medical opinion evidence; and (3) improperly discredited the third-party function report; and that these errors were harmful.

ORDER GRANTING SUMMARY JUDGMENT AND REMANDING FOR AWARD OF BENEFITS ろ 6

# DISCUSSION

## I. The ALJ Erred by Discrediting Plaintiff's Testimony

Plaintiff claims the ALJ improperly discounted her testimony concerning the severity of her impairments. An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *Garrison*, 759 F.3d at 1014. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).

In this analysis, the claimant is not required to show "that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of that symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Nor must a claimant produce "objective medical evidence of the pain or fatigue itself, or the severity thereof." *Id.*

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons to do so." *Id.* at 1281.

### a. Plaintiff's Testimony

Plaintiff's testimony included statements regarding the existence of pain-related impairments as well as the extent and consequences of those limitations.[1] Plaintiff complained of back and hip pain generally. Plaintiff complained of increased pain when walking or standing, as well as when sitting upright. Finally,

---

[1] At the hearing, Plaintiff acknowledged that her pain and related symptoms were the reason she was unable to work, and that her depression and mental health related illnesses were not disabling.

**ORDER GRANTING SUMMARY JUDGMENT AND REMANDING FOR AWARD OF BENEFITS** - 7

Plaintiff alleged that she needed to lie in a semi-supine position periodically throughout the day.

### b. The ALJ's Credibility Determination

The ALJ found that the underlying impairments were supported by objective medical evidence, and that the evidence could be reasonably expected to produce the pain described. However, the ALJ proceeded to step two of the symptom testimony evaluation and found Plaintiff's statements concerning the intensity and limiting effects of these symptoms not entirely credible for the following reasons.

First, the ALJ found that complaints of difficulty with standing and walking were supported by the medical record. However, the ALJ found that complaints regarding pain when sitting and the need to lie in a semi-supine position periodically were not supported by the medical record, due to an alleged absence of corroborating evidence and because other limitations were present in the record.

The ALJ also questioned the severity of both the hip and back pain, based upon her misapprehension that the Plaintiff had been decreasing her pain regiment, a few instances in which the Plaintiff indicated that she was "doing well" on her pain medication, and the Plaintiff's refusal to avail herself of physical therapy.

Finally, the ALJ rejected the Plaintiff's reports regarding the severity of her lower back pain because she did not raise those concerns at the first visit included in the medical record and because she was not referred for imaging of her lower back. All of these reasons given are either factually inaccurate or not adequate reasons for discrediting symptom testimony.

### i. *The ALJ Erred in Discrediting Allegations of Pain with Prolonged Sitting*

The ALJ discredited Plaintiff's allegations of pain with prolonged sitting, stating that "At the hearing she alleged difficulty with prolonged sitting, but complaints in the medical record are of difficulty walking." ECF No. 9, at 31.

The ALJ's argument that the *presence* of medical opinion evidence supporting limitations with walking supports the *absence* of limitations with sitting

**ORDER GRANTING SUMMARY JUDGMENT AND REMANDING FOR AWARD OF BENEFITS** - 8

is a classic logical fallacy, affirming a disjunct. The ALJ's implied finding that there are no complaints in the medical record of difficulty sitting is factually incorrect. Dr. Turner reported that the Plaintiff's pain was "typically worse with walking or sitting and is constant." ECF No. 9 at 442-43. Nurse Strand noted that Plaintiff's pain was a persistent "4-5/10" when sitting, even while on Tramadol. ECF No. 9 at 413. This led to a shift to Oxycodone, and after the switch, Dr. Kiki still noted pain when sitting of 2/10. ECF No. 9 at 430. Dr. Wally further corroborated this by noting that Plaintiff's left hip osteoarthritis reduced sit tolerance. *Id.* at 583. Thus, the ALJ's rationales for discrediting Plaintiff's symptom testimony regarding pain while sitting are not adequate.

    *ii.    The ALJ Erred in Discrediting Allegations of a Need to Lie Down*

The ALJ discredited Plaintiff's alleged need to periodically lie down in a semi-supine position as being proffered by her attorney, and for a lack of corroborating medical opinion evidence. Plaintiff's representative at the hearing did state that Plaintiff "has a need to lie down periodically throughout the day." ECF No. 9 at 83. This was summary of Plaintiff's symptom testimony, which included complaints of pain when sitting for prolonged periods, and a description of her typical state as "kind of in-between" sitting and lying down. *Id.* at 93.

There are four pieces of relevant medical evidence within the record. Dr. Turner completed a Physical Functional Evaluation, which indicated that "sitting" was not among the work activities affected by Plaintiff's various pain conditions, and cleared Plaintiff for sedentary work. ECF No. 9 at 571-72. However, that same worksheet also omitted "standing" as an affected work activity, and it is clear that by the time of the hearing, Plaintiff's condition had worsened to preclude standing.

A Social Security and Disability Report from July of 2016, also filled out by Dr. Turner, included the question "does your patient have to lie down or elevate his/her lags during the day?" *Id.* at 568. Dr. Turner's answer was "unsure." *Id.*

A Physical Functional Evaluation completed by Dr. Kiki in July of 2016 was

**ORDER GRANTING SUMMARY JUDGMENT AND REMANDING FOR AWARD OF BENEFITS ~ 9**

more equivocal. It specified that Plaintiff would miss four or more days during an average month "[d]ue to all the pain and having to take a lot of breaks to sit or lay down." *Id.* at 582. Finally, a Medical Report from Dr. Linda Wally that was also completed in July of 2016 indicates that Plaintiff has severe osteoarthritis in her left hip "which limits sit/stand/gait tolerance." *Id.* at 583.

An ALJ must consider objective medical evidence when determining the intensity and persistence of a claimant's alleged symptoms. *See* 20 C.F.R. § 416.929(c)(2). However, an ALJ will not reject a claimant's statements "solely because the available medical evidence does not substantiate [a claimant's] statements." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ can consider in his credibility analysis").

Ninth Circuit case law, on the other hand, makes clear that "an ALJ may reject a claimant's statement about the severity of his symptoms and how they affect him if those statements are *inconsistent* with or *contradicted* by the objective medical evidence." *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 887 (9th Cir. 2006) (emphasis added); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995). Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld. *Burch*, 400 F.3d at 679.

Were this an instance where the ALJ had properly identified these somewhat conflicting pieces of medical evidence and found Dr. Turner's opinion from 2015 more persuasive, this Court would be bound to uphold that interpretation. However, the ALJ claimed that "no examining source indicated that [lying down periodically] was necessary." ECF No. 9 at 31. Dr. Kiki was Plaintiff's treating physician since 2014, and he indicated precisely that. *Id.* at 582.

iii. *The ALJ Erred in Discrediting the Alleged Severity of Pain Due to a Factual Misapprehension*

The ALJ discredited Plaintiff's testimony about the severity of the pain

**ORDER GRANTING SUMMARY JUDGMENT AND REMANDING FOR AWARD OF BENEFITS ろ 10**

based upon a mistake regarding Plaintiff's history of pain medicine, a few instances where the pain treatment was noted to be effective, and Plaintiff's failure to take advantage of physical therapy.

First, the ALJ (and the Government in its motion for summary judgment) simply misunderstood Plaintiff's pain medication dosage. The ALJ stated that Plaintiff "did not request changes to her narcotic pain medication. In fact, it appears that her use has decreased. She began taking oxycodone in February 2015 and prescribed eight pills at that time. At the hearing, she testified she was taking up to five pills per day." The record and the Plaintiff's testimony make clear that she was initially prescribed Tramadol, 50 mg. every 6 hours as needed, in June of 2014. ECF 9 at 408. In September of 2014 she was switched to Oxycodone, 5 mg, 1-2 pills a day, because the Tramadol was insufficient to address her pain. *Id.* at 415. That dosage was increased to three pills a day, *Id.* at 421, and then five pills a day. *Id.* at 581.

Additionally, discrediting Plaintiff's testimony because of a few instances where the pain treatment was "effective" was error. The Ninth Circuit has repeatedly emphasized that "while discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment." *Garrison*, 759 F.3d at 1017, (citing *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001)). "Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Id*. Reports of improvement in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms. *Id.*

//

//

**ORDER GRANTING SUMMARY JUDGMENT AND REMANDING FOR AWARD OF BENEFITS** ~ 11

### iv. The ALJ Erred in Discrediting Plaintiff's Testimony Due to Treatment History

The fourth reason the ALJ gave to discredit Plaintiff's testimony was her alleged failure to address her back pain at her first doctor's visit, and purported absence of a referral for imaging of Plaintiff's lower back. This is factually incorrect. The ALJ stated that Plaintiff "didn't complain of back pain upon first seeking treatment, in March 2014." However, she first sought treatment in January, 2014, and at that appointment she reported low back pain.

Because all of the reasons the ALJ provided for discrediting the Plaintiff's testimony were factually incorrect or legally insufficient, the ALJ erred in discrediting Plaintiff's symptom testimony.

## II. Whether the ALJ Improperly Rejected Medical Opinion Evidence?

Plaintiff contends the ALJ improperly rejected the medical opinion evidence of Dr. Kiki, Dr. Wally, and Dr. Michael Turner. The Ninth Circuit distinguishes between three categories of medical providers when assigning the weight to be given to their opinions: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *as amended* (Apr. 9, 1996). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan*, 246 F.3d at 1202.

A treating provider's opinion is controlling, unless contradicted by substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2). Even if there is substantial contrary evidence in the record, it is still "'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007), quoting Social Security Ruling 96–2p at 4,

**ORDER GRANTING SUMMARY JUDGMENT AND REMANDING FOR AWARD OF BENEFITS** ろ 12

*available at* 61 Fed.Reg. 34, 490, 34,491 (July 2, 1996).

### a. Dr. Michael Turner, M.D.'s Opinion

The parties' dispute regarding Dr. Turner's opinion turns on one limitation. In January of 2016 Dr. Turner opined that Plaintiff would miss three days of work per month or more, explaining that "being on her feet for extended periods of time would cause a pain flare." ECF No. 9 at 569. In October of 2015, Dr. Turner filled out a physical functional examination, which limited claimant to sedentary work but found no limitations regarding sitting. ECF No. 9 at 571. The ALJ limited Plaintiff to sedentary work, and thus found Dr. Turner's opinion that "being on her feet for extended periods of time" would cause Plaintiff to miss three days of work per month irrelevant. The ALJ gave more weight to the physical functional examination, as it did not assume non-sedentary work, and in so doing, the ALJ did not err.

### b. Dr. Jeff Kiki, M.D.'s Medical Report

Dr. Kiki completed a medical report, ECF No. 9, 543, which supported the contention that Plaintiff would be unable to work due to excessive absences. The report was given low weight by the ALJ because (1) he did not explain his opinion with citations to evidence, (2) the ALJ found that the form appeared to be "solely a transcription of the claimant's subjective complaints, and (3) the ALJ perceived inconsistencies between Dr. Kiki's own course of treatment and the medical report.

The latter two rationales are appropriate reasons for giving the medical report low weight, *see Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014); *Orn*, 495 F.3d at 631, and thus the ALJ did not err.

### c. Dr. Linda Wally, M.D.'s Medical Report

Dr. Wally submitted a medical report that also found Plaintiff would miss four or more days of work per month. ECF No. 9 at 545. Dr. Wally's explanation for the missed days was due to overuse leading to severe degradation of Plaintiff's hip condition. The ALJ discounted this opinion because it was made after only two

**ORDER GRANTING SUMMARY JUDGMENT AND REMANDING FOR AWARD OF BENEFITS ~ 13**

months of treatment history, it was based in part upon Dr. Wally's review of the medical record, and the ALJ did not believe that sedentary work would result in the overuse that Dr. Wally foresaw.

None of those are valid reasons for discounting a treating physician's opinions. The ALJ may not supplant a treating physician's medical opinion with her own and presuming that Dr. Wally made her recommendation without considering the possibility of sedentary work is not proper. This opinion corroborates the contested notion that Plaintiff would miss four or more days of work per month and goes to the central issue in this case. Thus, the ALJ erred by giving Dr. Wally's opinion low weight, and such error was not harmless.

### III. The ALJ Improperly Rejected the Third-Party Report.

Plaintiff's mother submitted a third-party function report, which the ALJ gave little weight, alleging that the description of Plaintiff's limitations provided by the third party were "not entirely consistent with the evidence (i.e. her longitudinal treatment history, the objective clinical findings, her performance on physical examinations, and her independent daily activities.)" ECF No. 9 at 32. Plaintiff contends this was error, citing to Ninth Circuit precedent that holds a third-party function report cannot be discredited solely because the claimant was found to be non-credible. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

It was not error for the ALJ to passthrough the logic for giving Plaintiff's testimony little weight to the third-party function report. This is not a scenario where a finding of low credibility for the claimant is imported to a third-party. Rather, the ALJ found that the same reasons for finding Plaintiff's self-reported symptoms non-credible applied to the third-party report. However, because those reasons were insufficient regarding Plaintiff due to factual misapprehensions in the record, they are also insufficient for the third-party report.

//

//

**ORDER GRANTING SUMMARY JUDGMENT AND REMANDING FOR AWARD OF BENEFITS ~ 14**

## IV. The ALJ's Error Was Harmful.

As indicated above, the ALJ discredited Plaintiff's subjective symptom claims and a third-party report for reasons that did not satisfy the clear and convincing standard, and improperly weighed Dr. Wally's medical evidence. The Court must now determine whether the ALJ's error was harmless. An error is harmless if it is "inconsequential to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). Plaintiff bears the burden of showing the ALJ's error was harmful. *Shinseki*, 556 U.S. at 409-10.

If Dr. Wally's improperly rejected evidence were credited as true, the ALJ should have instructed the vocational expert to determine whether claimant would be precluded from work due to missing three or more days of work per month. The ALJ did present this question to the vocation expert. *See* ECF No. 9 at 67. The vocational expert found that such a high level of absences would not be tolerated in the unskilled labor market. *Id.*

Having determined that the ALJ's error was harmful, the Court must now order an appropriate remedy. The decision whether the remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen*, 80 F.3d at 1292)).

The ALJ would be required to find the claimant disabled on remand, given the vocational expert's testimony. *See Garrison,*, 759 F.3d at 1020. Consequently, the proper remedy is to remand for a calculation and award of appropriate benefits. *Id.* at 1019-20.

## CONCLUSION

The ALJ erroneously discredited Plaintiff's statements concerning the intensity, persistence, and limiting effects of her hip and back pain, as well as the

corroborating third-party function report. Further, the ALJ improperly weighed Dr. Wally's medical opinion that Plaintiff would be required to miss three or more days of work per month. Had this evidence been properly credited, Plaintiff would have been found disabled. Consequently, the proper remedy is to remand for a calculation and award of appropriate benefits.

Accordingly, **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 12, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, ECF No. 13, is **DENIED**.

3. The Decision of the Commissioner is **REVERSED** and **REMANDED** for a calculation and award of appropriate benefits.

4. The District Court Executive is directed to enter judgment in favor of Plaintiff and against Defendant.

**IT IS SO ORDERED**. The District Court Clerk is hereby directed to enter this Order and provide copies to counsel.

**DATED** this 14th day of June 2019.



Stanley A. Bastian
United States District Judge

**ORDER GRANTING SUMMARY JUDGMENT AND REMANDING FOR AWARD OF BENEFITS ~ 16**